ELIZABETH WALDOW
NATIONAL PARK SERVICE
P.O. Box 517
Yosemite, California 95389
Telephone: (209) 372-0243

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 6:07-mj-00188 |
| | ) | |
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| | ) | PETITION FOR PRETRIAL |
| | ) | DIVERSION |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | Date:   March 19, 2008 |
| ANGEL TONY MARTINEZ, | ) | Time:   10:00 a.m. |
| | ) | Court:  U.S. Magistrate |
| Defendant. | ) | Judge:  Hon. William M. |
| _____ | ) | Wunderlich |

The United States of America, by and through its
representative, Elizabeth Waldow, Legal Officer for the
National Park Service, in the Eastern District of California,
hereby responds in opposition to the defendant's petition for
pretrial diversion.

                I. STATEMENT OF THE CASE FACTS

     On August 5, 2007, the Defendant, Angel Tony Martinez, was
arrested within Yosemite National Park ("Yosemite") for being
in a public place while under the influence of alcohol, to the
degree that he was a danger to himself or others or park

1   resources ("UIA"), in violation of 36 C.F.R. sec. 2.35(c).[1]

2       National Park Ranger Carly Lober reported that at

3   approximately 0015 hours, she contacted a woman seated in a

4   parked Chevrolet Tahoe in the Camp Four Campground parking lot.

5   The woman was identified as Monica Troncoso. Troncoso told

6   Ranger Lober that Troncoso's boyfriend was drunk and passed out

7   on top of the tent; she could not get into the tent and wanted

8   to sleep in the car. Ranger Lober went to camp site five with

9   the woman.  Ranger Lober observed a partially collapsed tent

10  and a large Hispanic male approached them at the site.  The man

11  was subsequently identified as the Defendant, Angel Tony

12  Martinez.  Troncoso indicated that Martinez was her boyfriend.

13  Ranger Lober observed that Martinez was unsteady on his feet,

14  his eyes were red, his speech slurred, and he had a very strong

15  odor of alcoholic beverage on his breath.  Martinez was talking

16  very loudly for the time of night in the campground.  Martinez

17  told Ranger Lober that he had a lot to drink and he was walking

18  around trying to keep the bear away from his wife.  Further,

19  Martinez stated to the ranger that he was a police officer in

20  San Francisco and his duty bag and credentials were in the car.

21  Ranger Lober made several attempts to persuade Martinez to

22  return to his tent.  Martinez continued to walk around the

23  campground talking very loudly, disturbing the other campers

24  and arguing with Troncoso.  The campground is located in close

25  proximity to a central park road, bear activity is common, the

26  Defendant exhibited objective signs of alcohol intoxication and

27

28      [1]   36 C.F.R. sec. 2.35(c) is a petty offense, a class B misdemeanor
        carrying a maximum penalty of up to six months in jail and a fine
        of up to five thousand dollars.

his continued arguing with his girlfriend which led Ranger
Lober to form the opinion that he was extremely intoxicated to
the degree that he posed a danger to himself, others, or park
resources.   Ranger Lober placed the Defendant under arrest for
UIA and he was transported to the Yosemite Holding Facility.
Once at the Facility, Martinez told rangers that he had
consumed seven beers, two to three mixed drinks and had vomited
on his car.  Martinez told the booking officer that he was
employed as a police officer in San Francisco.  A test of the
Defendant's blood alcohol ("BAC") was taken at 0218 hours and
indicated a BAC of .172% by EPAS.

Rangers returned to the campground and obtained Troncoso's
permission to search the Tahoe for the Defendant's duty bag and
law enforcement credentials.[2]  The rangers did not find law
enforcement credentials or anything in the Tahoe that indicated
that Martinez was a law enforcement officer.  Ranger Foster
called the San Francisco police department and the agency
advised Ranger Foster that there was no officer by the name of
"Angel Tony Martinez" employed there.

The Defendant was released from jail on the morning of
August 5, 2007, and had his initial appearance in Yosemite
Magistrate Court on September 18, 2007.  The federal defender's
office was appointed to represent the Defendant and discovery
was provided to the defense.  Status conferences held in 2007
were on October 16, November 6, December 4 and December 18.
The Defendant offered no proof that he was employed as a police

---

[2]    Police officers will frequently carry their issued law enforcement
equipment, such as duty belt, weapon, and other items in a duty
bag.

officer with any agency.  Plea offers were extended by the
government on October 2 and December 11, 2007. Subsequently,
the status conference set for February 12, 2008, was vacated
and the Defendant filed a motion on February 19, 2008, over
five months after his initial appearance.  The Defendant's
motion requests that the court to order a deferred entry of
judgment over the government's objection, or in the alternate,
accept a forfeiture of collateral and end the case.

   The government responds in opposition to the defendant's
motion.

II. STATEMENT OF ISSUE

   WHERE THERE IS NO STATUTORY AUTHORITY AND THE PROSECUTION
   OPPOSES THE PRETRIAL DIVERSION:  DOES THE UNITED STATE
   MAGISTRATE JUDGE HAVE AUTHORITY TO ENTER "DEFERRED
   ADJUDICATION", OR "DEFERRED ENTRY OF JUDGMENT", ALLOWING
   DISMISSAL OF CHARGES UPON SUCCESSFUL COMPLETION OF
   PROBATION?

ARGUMENT

A.   Where Congress intended authority for deferred
     adjudication it has expressly provided for such
     deferral.

   The defendant argues that local punishment is within the
discretion of the court as long as the punishment does not
exceed six months.  This argument is in error where the order
from the court results in dismissal of lawful charges without
statutory authority to do so.

   There is no general statutory authority for the court to
order "deferred adjudications" under Rule 58 Federal Rules of
Criminal Procedure, which provides rules of procedure to govern
misdemeanor and petty offenses brought before the magistrate
judges.  If Congress had intended Rule 59 to provide such
authority, it clearly would have expressly done so, as it has

1  in other narrowly defined authority.

2       Congress has enacted laws which in regard to certain

3  narcotics related offenses or offenders, narrow circumstances

4  not present here, allow a court to impose "pretrial diversion".

5  Under 18 U.S.C. § 3607 the court is specifically authorized to

6  use pretrial diversion sentence and expungement of records in

7  certain cases brought under 21 U.S.C. § 844(a). Section 3607

8  provides:

9       Special probation and expungement procedures for drug
         possessors.
10           (a) Pre-judgment probation.  If a person found guilty
         of an offense described in section 404 of the Controlled
11       Substances Act (21 U.S.C. 844)-
                 (1) has not, prior to the commission of such
12               offense, been convicted of violating a Federal
                 or State law relating to controlled substances;
13               and
                 (2) has not previously been the subject of a
14               disposition under this section;
         **the court may** (emphasis added), with the consent of such
15       person, place him on probation for a term of not more than
         one year without entering a judgment of conviction. At any
16       time before the expiration of the term of probation, if
         the person has not violated a condition of his probation,
17       the court may, without entering a judgment of conviction,
         dismiss the proceedings against the person and discharge
18       him from probation.  At the expiration of the term of
         probation, if the person has not violated a condition of
19       his probation, the court shall, without entering a
         judgment of conviction, dismiss the proceedings against
20       the person and discharge him from probation.  If the
         person violates a condition of his probation, the court
21       shall proceed in accordance with the provisions of section
         3565.
22       b. Record of disposition...
         C. Expungement of record of disposition...
23       18 U.S.C. sec. 3607.

24
   Clearly, had Congress intended to confer upon the judicial
25
   system the power to dismiss charges under certain conditions
26
   Congress would have expressly done so as provided in section
27
   3607 with the language "the court may."  That Congress has
28
   rarely delegated this authority is instructive, the authority

is not available to the court except under established statute and federal rules.[3]

A court may not otherwise order "Deferred adjudication" because it is not provided for as a condition of probation under Federal Criminal Procedures.  Conditions of probation set out mandatory conditions and discretionary conditions. *See generally* 18 U.S.C. sec. 3563.  The terms of discretionary conditions include twenty-two terms that a court **may provide** as further conditions of a sentence of probation. 18 U.S.C. sec. 3563(b).  Deferring entry of a conviction or dismissing a charge is not provided for under federal rules.

In a ruling out of the Eastern District of California, United States v. Martin, Cr. No. S-93-241-JFM, slip op. at 3 (E.D. Cal. Jan. 20, 1994), the District Court heard argument on the government's appeal of the Magistrate Judge's order giving the defendants a deferred entry of judgment.  Co-defendants Miki and Jeanette Martin were charged with theft of government property in violation of 18 U.S.C. § 641. Government Appellee Brief at 2, United States v. Martin (No. S-93-241-JFM) (Nov. 1, 1993).  On July 22, 1993, both defendants entered a plea of guilty in return for the Government recommending a sentence of a $500.00 fine and a special assessment of $25.00. Id.  Over the government's objection, the Magistrate Judge then deferred entry of judgment for one year on the condition that each defendant pay the fine and obey all laws during the period of

---

[3]     Federal courts are allowed to impose "pretrial diversions" under 18 U.S.C. sec. 3607; and also 28 U.S.C. sec. 2901 which allows courts to employ civil commitment as an alternative to criminal prosecution where narcotics addicts charged with certain federal crimes show promise of rehabilitation through treatment.

probation. Id. at 3.  The government appealed for correction of
sentence based on clear error by the Magistrate.  Judge Garcia
ruled that deferred entry of judgment is only permissible
pursuant to Section 3607 of Title 18, and only for a certain
specified crime, and then only under certain limited
conditions. Martin, slip op. at 3.  The District Court said
that to apply section 3607 to a theft statute was in excess of
the Magistrate's jurisdiction and was a nullity. Id.  Judge
Garcia concluded that the federal courts lack authority to
defer entry of judgment in theft type cases and remanded the
matter to the Magistrate's court with the direction that it
enter judgment on the defendant' conviction and impose
sentence. Id. at 4.

Additional supporting case law is found in the Eastern
District court's review of a Yosemite magistrate's order to
"not report" a criminal conviction, where the District Court
held that the action of the magistrate impermissibly invaded
the executive sphere of government's responsibility to report
criminal convictions. United States v. Sweeney, 914 F.2d 1260,
1261 (9th Cir. 1990.).  The Ninth Circuit affirmed the District
Court's judgment and further characterized the dismissal of the
defendant's conviction following a period of probation as
having the same effect as an expungement. Id. at p.1264. In
Sweeney, the defendant pled guilty to violating Code of Federal
Regulations prohibiting operating a motor vehicle while under
the influence of alcohol.[4] Id. at p.1261.  Sweeney requested

---

[4]     Defendant Sweeney was convicted of a violation of 36 C.F.R. sec.
        4.23(a)(2) which is a class B misdemeanor.

1    that the court order the government to "not report" the
2    conviction because the defendant believed the conviction would
3    jeopardize his chance to obtain a California Class 1 driver's
4    license. Ibid.  Although the government insisted the
5    convictions should be reported, the magistrate ordered that the
6    convictions were not to be reported to the California
7    Department of Motor Vehicles. Id. at p. 1263.  The Ninth
8    Circuit held that the magistrate did not have authority under
9    28 U.S.C. § 636(a)-(b) and 18 U.S.C. § 3401 to impose
10   conditions unrelated on the defendants' sentences on third
11   parties as part of the criminal judgment. Ibid.

12        The Sweeney appellate court reasoned that the Justice
13   Department had a duty to collect criminal records data and make
14   it available to law enforcement agencies throughout the
15   country. Id. at p.1263-1264. Centralized reporting of criminal
16   identification, crime and other records is a duty assigned to
17   federal law enforcement agencies and there is a public purpose
18   to the reporting. Id. at p.1264.  Reporting criminal charges
19   and convictions in a central location allows for identification
20   of persons responsible for crimes, and facilitates
21   identification of missing or deceased persons. Ibid.  The
22   present case also involves a defendant charged with a class B
23   misdemeanor under Title 36 Code of Federal Regulations.
24   Martinez, unlike Sweeney, has not pled guilty and is asking the
25   court to "defer entry of the conviction" prior to the entry of
26   any guilty plea.  during a probationary period, following
27   probation the charge would be dismissed.  The Prosecution
28   objected to Sweeney's request would object to Martinez's

1  request where the conduct described in the police report

2  established not only the charged offense of UIA but also where

3  Martinez falsely represents himself as a police officer.  Here,

4  the defense argument that the magistrate has authority to

5  prohibit the reporting of the conviction should fail, as it

6  failed in Sweeney.  Id. at p.1263.

7       Persuasive authority on this issue can be found in the

8  Tenth Circuit case of United States v. Campbell, 132 F.3d 43,

9  1997 WL 755121 (10th Cir. 1997).[5]  In Campbell, co-defendants

10  Campbell and Zierenberg pled guilty in magistrate court for

11  removing elk antlers from Grand Teton National Park in

12  violation of Title 36 Code of Federal Regulations. Id. at p. 1.

13  The magistrate ordered fines and deferred adjudication of guilt

14  for two years with conditions that the defendants violate no

15  laws for that period.  Ibid.  The government objected to the

16  magistrate's order and appealed to the district court.  The

17  district court found that the magistrate had no authority to

18  defer adjudication of guilt or to dismiss the charges following

19  a probationary period over the opposition of the

20  government.[6]  Ibid.  Campbell is on point to the current case

21  and reinforces the Sweeney reasoning.

22  ///

23  ///

24  _____

25    [5]   US v Campbell and co-defendant case US v Zierenberg are
       unpublished opinions.

26

27    [6]   US v Campbell was an appeal by the defendants to the 10th Circuit.
       The 10th Circuit dismissed the defendants' appeal on

28         jurisdictional grounds and the decision of the district court was
       upheld, the case was remanded to the magistrate for entry of
       judgment consistent with the holding of the district court.

///

B.   <u>The present case is not brought under the Assimilated</u>
     <u>Crimes Act and there is no assimilation of state</u>
     <u>charges.</u>

The defendant argues that state deferred prosecution
programs are forms of punishment that should be incorporated
into state charges filed in federal court under the
Assimilative Crimes Act ("ACA"). <u>18 U.S.C. 13.</u>  This argument
fails on its face because the defendant here is not charged
under the ACA but is charged with violating a federal
regulation.  There is no assimilation of any state charges
against Angel Martinez in the present case.  The defendant
relies upon two cases brought before the Ninth Circuit: <u>United</u>
<u>States v. Bosser</u>, 866 F.2d 315 (9th Cir. 1988); and <u>United</u>
<u>States v. Sylve</u>, 135 F.3d 680 (9th Cir. 1998).  In <u>Bosser</u> the
defendant was charged within a federal enclave with violating a
Hawaii forgery statute and the state charge was assimilated
into federal court proceedings under the ACA. <u>United States v.</u>
<u>Bosser, supra,</u> at p.316. Hawaii had a rule that allowed a
defendant to serve a probation-like sentence in place of having
a conviction entered on the record and affording a dismissal at
the conclusion of the sentence if all terms have been
successfully met. <u>Id.</u> at p. 317.  Likewise, in <u>Sylve</u>, the
defendant was charged under the ACA with the state regulation
prohibiting driving under the influence of alcohol and having
an open container in his vehicle, assimilating Washington state
law within a federal enclave. <u>United States v. Sylve, supra,</u> at
p.680. Washington state had a deferred prosecution available to
persons charged with misdemeanors who admit under oath that

their conduct resulted from alcoholism, drug addiction, or
mental problems for which they are in need of treatment. Id. at
p.681.  The terms of the deferral mandated supervised
probation, a rigorous treatment program, included
relinquishment of right to refuse certain prescription drugs,
total abstinence from alcohol, and a probationary driving
license for five years. Id. at p.681-682.  Distinguished from
the current case, where Martinez has made no claim that his
single charge of UIA is the result of alcoholism, drug
addiction, or mental illness.  The Ninth Circuit has held that
defendants committing violations on federal land that are
charged under the ACA with state crimes should be subject to
the same punishment that they would have received in the state.
United States v. Bosser, supra, at p.318; United States v.
Sylve, supra, at p.683-684.  The current case is distinguished
from both Bosser and Sylve in that Martinez is charged with a
violation of federal regulations.  The defendant errors in
citing that Sylve was held to apply to the CFR as well as the
ACA.  The government was unable to find any reference to the
CFR in Sylve and the government argues that neither case is
applicable to federal charges brought on federal land.  In
United States v. Brotzman, 708 F.Supp. 713, 714-715 (D. Md.
1989), the District Court recognized that the federal penalty
regulation did not allow a stay of judgment with probation
before judgement.  In Brotzman, the defendant was charged with
driving while suspended under Code of Federal Regulations § 4.2
incorporating Maryland state law.  The Magistrate proceeded to
stay the entry of judgment over the opposition of the United

States and placed the defendant on probation before judgement

referring to sentencing provisions of Maryland state law. Id.

at 714.  The Brotzman court found that it was clear from the

history of the Code of Federal regulations developed by the

Secretary of Interior that there was an express attempt to

avoid the application of state-law penalties, as would be the

case were similar offenses were charged under the Assimilative

Crimes Act. Id. at 715.  The Magistrate's "consent to stay

entry of judgment" was vacated and the case was remanded for

sentencing in accordance with applicable federal statutes and

regulations. Id. at 716.

      C.   Even if the present charges were assimilated from California state, California has established guidelines for deferred entry of judgment and many state courts have held that the court may not impose a deferred judgment without the concurrence of the prosecution.

Arguendo, if the current case involved a California state

law assimilated under the ACA the outcome would still be in

contrast to Bosser and Sylve because of how California

regulates deferred adjudication.  Within California Penal Codes

there are, at least, the following provisions for diversion:

Drug Abuse, Cal.Pen.Code, § 1000-1000.5; Domestic Violence

§1000.6-1000.11; Child Abuse and Neglect §1000.12-1000.36; and

Misdemeanor Diversion §1001-1001.55.  The determination that a

defendant is a candidate for statutory diversion is made by the

district attorney. Cal.Pen.Code, § 1000(a); §1000(b). Where

provided for by statute the court may make a determination in

Domestic Violence cases that the diversion chapter applies. Id.

at § 1000.6.  In Child Abuse nothing shall deprive the

1    prosecuting attorney of the ability to prosecute a suspect. <u>Id.</u>

2    at § 1000.12(a).  Generally, in misdemeanors, no person shall

3    be diverted under a program unless the program has been

4    approved by the district attorney. <u>Id.</u> at § 1001.2(a). A case

5    which is deferred is a case which has been filed, in which the

6    defendant plead guilty, but entry of judgment is postponed

7    pending the criminal's completion or failure to complete a

8    tailored rehabilitation program. <u>People v. Andreotti,</u> 111

9    Cal.App.4th 1263 (Ca. 3rd Dist. 2001).

10       California case law on the issue of a court ordering

11   diversion over the opposition of the People have held that the

12   trial court lacked the authority to defer entry of judgment

13   under Cal.Pen.Code § 1000, where the defendant was charged with

14   possession of methamphetamine. <u>People v. Wright</u>, 99 Cal.App.4th

15   201, 203(Ca. 6th Dist. 2002).  Under a Child Abuse case the

16   defendant argued that Cal.Pen.Code § 1000.12 imposed a

17   separation of powers violation of the court's authority where

18   the legislature intended to remove any judicial interference

19   from the prosecuting attorney's ability to fully prosecute the

20   charges.  <u>People v. Andreotti, supra,</u> at p. 1266.  The state

21   appellate court declined to interpret a statute to allow a

22   trial court to grant deferral over the wishes of the People.

23   <u>People v Andreotti, supra</u>, at p.1274.  The <u>Andreotti</u> court did

24   not view the deferral option as another sentencing choice given

25   to the court. <u>Ibid.</u>  Rather, the court stated that the

26   defendant's eligibility for a deferred judgement did not

27   entitle him to one, where the People did not invoke such

28   procedure. <u>Id.</u> at p.1275.  The state appellate court agreed

with the People's argument that a trial court judge has no power under the separation of powers doctrine to tell the prosecution how to plead and prosecute a criminal action. Id. at p. 1267-1268.  In California, a trial court could no more order deferral over the wishes of the People than it could accept a plea bargain to lesser charges over their wishes.  Id. at p. 1273.  Once the defendant plead guilty and the prosecutor moves for deferral the decision of how to dispose of the charges is in the hands of the court. Ibid.

> D.  Where the court orders deferred adjudications over the objections of the government the resulting dismissal of the charges constitute a violation of separation of powers under the Constitution.

It is not contested that the Secretary of Interior has authority delegated from Congress to develop regulations and subordinate rules for the National Park Service.  The defendant's claim that 36 C.F.R. sec. 1.3(a) authorization of penalties is constitutional only if in conformity with local punishment, is wrong.  Federal law will occupy the field. Clearly, "deferred adjudications" contravene the separation of powers doctrine where they are entered without express statutory authorization and without the concurrence of the United States.  The employment of deferred adjudication with the government's objection is a judicial veto over the government's charging decisions.  The result is the final dismissal of federal criminal charges at the conclusion of a probationary period where, here, as in Campbell, the decision had nothing to do with the lawfulness of the governments charging decision. See generally, United States v. Campbell,

132 F.3d 43 (10ᵗʰ Cir. 1997).  Without statutory authority a court would rely only upon the relative judgment as to what an equitable or appropriate resolution would be for a defendant, this the court may not do. United States v. Crowell, 374 F.3d 790, 793 (9ᵗʰ Cir. 2004).  In United States v. Simpson, 927 F.2d 1088, 1090, (9ᵗʰ Cir. 1991), the court could not exercise supervisory powers to dismiss charges even in cases where the government used sleazy investigatory tactics, absent a violation of a constitutional right.  A district court lacks the power to remove a criminal record based on solely equitable considerations.  United States v. Crowell, 374 F.3d 790, 793 (9ᵗʰ Cir. 2004).  The removal of the record of arrest and conviction usurps the powers that the framers of the Constitution allocated to Congress, the Executive, and the states. Ibid.

The current case is without any allegations of legal error or misconduct on the part of the government.  Any dismissal of the charge against Martinez would be based on equitable reasons.  The charge of UIA is a petty offense with minimal impact upon a defendant's record, certainly less impact than falsely representing oneself as a police officer.

The Ninth Circuit held in United States v. Carrasco, 786 F.2d 1452, 1455, (9ᵗʰ. Cir. 1986)(*overturned on other grounds),* that the district court improperly intruded upon the prosecutor's discretion where the court dismissed a count on its own motion.  The Carrasco court dismissed the harboring illegal aliens charge against the defendant because the court considered the charge unnecessary in determining the

1  appropriate sentence. <u>Carrasco</u> at p. 1455-56, *see also* <u>United</u>

2  <u>States v. DeBright</u>, 703 F.2d 1255, 1257 (9th Cir. 1984).

3      Under Rule 11, Fed.R.Crim.P., section (c)(1) states that

4  an attorney for the government and the defendant's attorney may

5  discuss and reach a plea agreement.  The court is not to

6  participate in these discussions. <u>Ibid.</u>  Allowing a defendant

7  to plead guilty to the charges against him and then negotiate

8  directly with the court which, or if any, of the charges will

9  be entered upon his criminal record violates the direction of

10 Rule 11.  The government is deprived of its right to

11 prosecutorial discretion and is removed from the plea

12 negotiation process when the court orders a deferred

13 adjudication over the objection of the government.  The

14 dynamics of defense and prosecution arguing the law and case

15 facts before the trier of facts is aborted.

16                  <u>III. STATEMENT OF ISSUE.</u>

17      FEDERAL RULE 58(d) IS NOT APPLICABLE WHERE THE DEFENDANT
        RECEIVED A MANDATORY CITATION OR ORDER TO APPEAR.
18

19      A.   <u>General Order 457 allows for forfeiture of collateral</u>
             <u>bail under specified circumstances and not where the</u>
20           <u>defendant had a required mandatory appearance.</u>

21      The Defendant cites Rule 58 as applicable in the present

22 case.  Rule 58(d) allows for paying a fixed sum in lieu of

23 appearance.[7]  In the present case the Defendant was arrested and

24 _____

    [7]
25        Fed. R. Crim. P. 58(d)(1) In General.  If the court has a local
          rule governing forfeiture of collateral, the court may accept a
          fixed-sum payment in lieu of the defendant's appearance and end
26        the case, but the fixed sum may not exceed the maximum fine
          allowed by law.
27        Fed. R. Crim. P. 58(d)(2) Notice to Appear.  If the defendant
          fails to pay a fixed sum, request a hearing or appear in response
          to a citation or violation notice, the district clerk or
28        magistrate judge may issue a notice for the defendant to appear
          before the court on a date certain. The notice may give the
          defendant an additional opportunity to pay a fixed sum in lieu of
                  Government's Response to Defendant's Motion
                                    16

1  then released from custody with a mandatory order to appear

2  before the court.  Angel Martinez was never issued a citation

3  with a set bail forfeiture amount. Rule 58(d) is not applicable

4  to this Defendant at this point in the proceeding.  Subpart

5  58(d)(1) states that where the court has a local rule governing

6  forfeiture of collateral the court may accept a fixed-sum

7  payment in lieu of appearance and end the case.  In the Eastern

8  District of California local General Rule 457 applies.  Rule

9  457 states that:

10      E.D. Cal. R. 457
            (a). Forfeiture of Collateral - Generally
11      Persons charged with certain misdemeanors may, in lieu of
        appearance, post collateral in the amount indicated for
12      the offense, waive appearance before a magistrate judge,
        and consent to forfeiture of collateral, **unless either the
13      charging document makes appearance mandatory or the
        offense charged is not provided for** in this Collateral
14      Forfeiture Schedule.(emphasis added)
            (b) Forfeiture of Collateral Schedule
15      The offenses for which collateral may be posted and
        forfeited in lieu of appearance by the person charged,
16      together with the amounts of collateral to be posted are
        provided for herein.
17          (c) Excluded Offenses
        A person charged with an offense requiring a Mandatory
18      Appearance or MA, or an offense not otherwise listed
        herein may not be permitted to post collateral, waive
19      appearance before a magistrate judge, and consent to
        forfeiture of collateral.
20          (d) Maximum Penalties in Lieu of Forfeiture of
        Collateral.
21      If a person charged with an offense under subsection (a)
        hereof fails to post and forfeit collateral, a punishment,
22      including fine, CVB processing fee, special assessment (18
        USC 3113), imprisonment or probation, may be imposed
23      within the limits established by law upon conviction by
        plea or after trial.

24

25  Even if the defendant had not been arrested and ordered to

26  appear in court under General Order 457 Mandatory Appearance

27  (MA) in Court would have applied because the offense involved a

28  _____

        appearance...

threat to the safety or welfare of his girlfriend, other campers, himself and wildlife (as property of the U.S.).[8]

     B.   <u>Collateral forfeitures may not be appropriate for complex factual and legal issues.</u>

Collateral forfeitures may not be appropriate for all types of petty offenses. <u>United States v. Dean</u>, 418 F.Supp.2d 149, 155 (E.D. N.Y. 2006). Rule 58 had an original focus on traffic violations and other *malum prohibitum* offenses. <u>Ibid</u>. The Rule was to be used only in the most straightforward of cases, rather than ones with complicated facts and law. <u>Ibid</u>.

The Eastern District Court of New York held that so long as the amount set as collateral on the summons does not exceed the maximum fine set by Code of Federal Regulations the collateral may be set regardless of the fine set forth in the Bail Schedule of Fines. <u>United States v. Roper</u>, No. 03-M-361 (CLP), 2004 WL 3214758 (E.D. N.Y. 2004) at *2. The <u>Roper</u> court characterized the Schedule of Fines as advisory. Noting that the payment of collateral bail to resolve a cause of action is optional. <u>Ibid</u>. Further stating that the Government is not required to permit that the defendant be allowed to pay a collateral amount to dispose of the action. <u>Id.</u> at *3; <u>United States v Brasch</u>, No. 95 CR. 865(PKL), 1996 WL 363177 at *2 (S.D. N.Y. 1996).

---

[8]   E.D. Cal. R. 457 In all cases where a bail amount is listed, a mandatory appearance may be required at the discretion of the citing officer when:
1)   MA is listed in the alternative to a bail; OR
2)   The commission of the offense involved loss or damage to the property of the United States or another; OR
3)   The commission of the offense involved a threat to the safety and/or welfare of others; OR
4)   The offender has committed or has been charged with the same or similar offense(s) on prior occasion(s).

However, in United States v. Porter, 513 F.Supp. 245, 249 (D.C. Tenn. 1981) the court criticized fining a defendant ten times the amount set in the collateral bail schedule as having a chilling effect on the constitutional right to allocution but opined that fining the defendant twice the bail amount was permissible. Id. at 249. Congress has decreed that violations of promulgated regulations are punishable by fine and imprisonment up to six months. 16 U.S.C. § 3. Whether a defendant is found guilty at trial or forfeits collateral for a misdemeanor offense the defendant is "guilty of the charge" against him. Scharf, supra, at 382; Porter, supra, at 246.

## IV.  CONCLUSION

The current charge against the defendant did not originate as state charge filed in federal court under the Assimilated Crimes Act. Here, the current charge against the defendant is a violation of Code of Federal Regulation for which there is no express statutory authority providing for deferred adjudication. As such, the defense argument fails in its assertion that the holdings of United States v. Sylve and United States v. Bosser are applicable, these cases do not apply where the defendant has been charged with a violation of federal regulation. Where Congress intended to provide for deferred adjudication it incorporated specific language for "special probation" as found in 18 U.S.C. 3607. Without statutory authority the court would dismiss a case lawfully brought and this is a violation of federal separation of powers.

1   ///

2   The government respectfully requests that the court deny the

3   Defendant his motion for a pretrial diversion and deny the

4   Defendant's alternate request to accept a forfeiture of

5   collateral as a fixed-sum payment.

6

7   Dated: March 14, 2008

8                                   Respectfully submitted,

9                                   By /s/Elizabeth Waldow

10                                      ELIZABETH WALDOW,
                                        Legal Officer
11                                      National Park Service

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28